# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| EBONY HOLMES-RAMSEY, as mother and next friend of A.B., a minor child, |
| Plaintiff, |
| v. |
| DISTRICT OF COLUMBIA, *et al.*, |
| Defendants. |

Civil Action No. 10–1283 (CKK)

## MEMORANDUM OPINION
(November 2, 2010)

Plaintiff Ebony Holmes-Ramsey ("Plaintiff") brings this action behalf of her minor daughter, A.B., pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*,[1] Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, the McKinney-Vento Homelessness Assistance Act ("McKinney Act"), 42 U.S.C. §§ 11431 *et seq.*, and 42 U.S.C. § 1983 ("Section 1983"). Compl. at 2, Docket No. [1]. Plaintiff names as Defendants to this action the District of Columbia, District of Columbia Mayor Adrian Fenty in his official capacity, and District of Columbia Chancellor of Public Schools Michelle Rhee[2] in her official capacity (collectively "Defendants"). This case comes to the Court on appeal from a

---

[1] The IDEA was reauthorized and recodified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004). The amendments provide that the short title of the reauthorized and amended provisions remains the Individuals with Disabilities Education Act. *See* Pub. L. No 108-446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400 (2006) ("This chapter may be cited as the 'Individuals with Disabilities Education Act'"). Accordingly, the Court refers to the amended Act herein as the IDEA.

[2] Michelle Rhee has been replaced by Interim Chancellor Kaya Henderson. Pursuant to Federal Rule of Civil Procedure 25(d), Henderson shall be substituted as defendant.

May 1, 2010 Hearing Officer Determination ("HOD") regarding Plaintiff's due process complaint against the District of Columbia Public Schools ("DCPS"). Compl. Facts ¶¶ 20, 49.[3]

Currently before the Court is Defendants' [6] Motion for Partial Dismissal of Complaint, in which Defendants argue that the Complaint fails to state a claim under Section 504 and Section 1983 and fails to state a claim against Mayor Fenty and Interim Chancellor Henderson. After reviewing the Complaint, the parties' filings regarding the pending motion, as well as the relevant statutes, regulations, and case law, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' Motion for Partial Dismissal of Complaint. Specifically, the Court shall GRANT Defendants' motion to dismiss Plaintiff's Section 504 claim and Defendants' motion to dismiss Mayor Fenty and Interim Chancellor Henderson as defendants. In regard to Plaintiff's Section 1983 claim, the Court shall GRANT Defendants' motion to dismiss insofar as the claim alleges that the hearing officer erred in concluding that he did not have jurisdiction over Plaintiff's McKinney Act claim. The Court shall DENY, however, Defendants' motion to dismiss Plaintiff's Section 1983 claim insofar as the Complaint states a McKinney Act violation independent of the hearing officer's jurisdictional decision.

## I. BACKGROUND

*A.  The IDEA Statutory and Regulatory Framework*

Although Plaintiff asserts claims under multiple statutes, the IDEA is of particular importance in this case. The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special

---

[3] In setting forth the Complaint's allegations, Plaintiff has numbered each paragraph that begins a new section of the Complaint—e.g., "Facts"—starting at 1, such that the Complaint contains several paragraphs that are numbered "1." To avoid confusion, the Court shall refer to paragraphs in regard to both their number and Complaint section.

education and related services designed to meet their unique needs . . . . " 20 U.S.C. § 1400(d)(1)(A). "Implicit" in the IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200 (1982). As a condition of receiving funding under the IDEA, school districts are required to adopt procedures to ensure appropriate educational placement of disabled students. *See* 20 U.S.C. § 1413. A student's eligibility for a FAPE is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" or "individualized education program" ("IEP") team. *Id.* § 1414. An IEP team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. *See id.* § 1414(d)(1)(B).

An IEP is created to meet the special educational needs of each disabled student. *See id.* § 1414(d)(2)(A). The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204. The IDEA requires IEPs to include statements of present functional performance, measurable annual goals, how the goals will be measured, and "the special education and related services and supplementary aids and services . . . to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child." 20 U.S.C. § 1414(d)(1)(A)(I). "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C.

3

Cir. 2005) (citation and alterations omitted).

The IDEA guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. *See* 20 U.S.C. §§ 1414(f), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, *see id.* §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses," *id.* § 1415(h). In the District of Columbia, a qualified impartial hearing officer conducts the due process hearing in accordance with the Act. D.C. Mun. Regs. tit. 5-E, § 3030.

B.     *Factual and Procedural Background* [4]

As of the filing of the Complaint, A.B., a four-year-old, had been diagnosed with, *inter alia*, Attention Deficit Disorder Hyperactivity Disorder, Borderline Intellectual Functioning, and Receptive/Expressive Language Disorder. Compl. Facts ¶ 1. Plaintiff alleges that DCPS violated its obligation under the IDEA to "locate, identify, evaluate and develop an IEP for all students eligible for special education by their third birthday" because DCPS failed to screen A.B. for special education services until nearly one year after A.B.'s third birthday. *Id.* ¶ 4; *see also id.* ¶¶ 3, 7. Consequently, A.B. attended Edward C. Mazique Parent and Child Center, a facility that did not provide special education services, during the 2008-2009 school year. *Id.* ¶ 5.

A.B. was first evaluated by DCPS on September 21, 2009. *Id.* ¶ 8. As a result of this evaluation, DCPS found that A.B. was not eligible for speech and language services. *See id.* Subsequently, on October 7, 2009, DCPS convened an IEP meeting for A.B. and drafted an IEP

---

[4] The facts set forth below are those most relevant to the pending motion to dismiss.

that specified A.B. was to receive ten hours of special education per week at Raymond Elementary School, A.B.'s neighborhood school at that time. *See id.* ¶¶ 10-11. At the IEP meeting, Plaintiff expressed concerns with A.B.'s placement in Raymond Elementary. *Id.* ¶ 11. Specifically, Plaintiff informed DCPS that she and A.B. were currently living in transitional housing, that they would have to vacate this housing near the middle of the school year, and that Plaintiff was concerned that after they moved, A.B. would have endure the disruption of being transferred to a different school in the middle of the school year. *Id.* ¶¶ 11-12. In response to these concerns, Plaintiff alleges that "DCPS did not offer to provide [Plaintiff] with transportation, or a different placement, nor did DCPS offer [Plaintiff] any of the services [Plaintiff] was entitled to under the McKinney-Vento Act. DCPS only told [Plaintiff] to contact DCPS if [Plaintiff] moved." *Id.* ¶ 12.

To avoid transferring A.B. from Raymond Elementary in the middle of the 2009-2010 school year, Plaintiff decided to keep A.B. enrolled at Edward C. Mazique Parent and Child Center for another year. *Id.* ¶ 15. Thus, similar to the year before, A.B. did not receive special education services during the 2009-2010 school year. *Id.*

On March 19, 2010, Plaintiff filed a due process complaint, alleging that DCPS (1) failed to timely identify, evaluate, and locate A.B.; (2) failed to identify all of A.B.'s disabilities; (3) failed to develop an appropriate IEP for A.B. for the 2009-2010 school year; and (4) failed to provide A.B. proper placement for the 2009-2010 school year, including failing to meet its obligations under the McKinney Act. *Id.* ¶ 20. With respect to relief, Plaintiff requested that the hearing officer find that DCPS denied A.B. a FAPE and order DCPS to provide compensatory education, as well as place and fund A.B.'s placement at a full-time non-public therapeutic

5

special education program. *Id.*

Before the due process hearing began on April 21, 2010, the hearing officer requested briefing as to whether he had jurisdiction over Plaintiff's McKinney Act claim. *Id.* ¶¶ 21-22. At the due process hearing, DCPS stipulated that it violated the IDEA by failing to locate, identify, and evaluate A.B. by her third birthday, as well as by failing to develop an IEP for A.B. until fourteen months after her third birthday. *See id.* ¶ 50. On May 1, 2010, the hearing officer issued the HOD, in which he found that DCPS' delay in developing an IEP for A.B. denied her a FAPE. *See id.* ¶¶ 49-50. For relief, the HOD ordered that DCPS fund pre-academic tutoring for A.B., as well as A.B.'s attendance at a therapeutic summer camp. *See id.* ¶¶ 49-50. The HOD denied, however, Plaintiff's remaining allegations, finding that the hearing officer did not have jurisdiction over Plaintiff's McKinney Act claim and that Plaintiff had not met her burden of proof on the remaining IDEA claims. *See id.* ¶¶ 50-51.

On July 30, 2010, Plaintiff filed the Complaint in this case. Count I of the Complaint alleges that "Section 504 requires substantial procedural compliance with all procedural and substantive rights under the [IDEA]," *id.* ¶ 75, and that Defendants violated IDEA and Section 504 by failing to provide A.B. with a FAPE, failing to "evaluate A.B. in all areas of her disability, and failing to provide an appropriate IEP and educational placement to A.B.," *id.* ¶ 76; *see also id.* ¶ 77. Count II alleges that "[b]y failing to award appropriate relief, and by failing to rule on DCPS' violation of the [McKinney Act], Plaintiffs have been denied federal statutory rights under color of law in violation of 42 U.S.C. § 1983." *Id.* ¶ 79.

Instead of filing an answer, Defendants filed a [6] Motion for Partial Dismissal of Complaint ("Defs.' Mot.") on August 19, 2010. Plaintiff then filed her [7] Opposition to

Defendants' Motion for Partial Dismissal of Complaint ("Pl.'s Opp'n") on September 2, 2010.[5] The time for Defendants to file a reply has long since expired, *see* LCvR 7(d) (providing that the moving party may file a reply within seven days of service of the memorandum in opposition), and therefore the matter is now ripe for the Court's review and resolution.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. 1949 (citing *Twombly*, 550 U.S. at 556).

---

[5] Plaintiff attached an October 1, 2009 DCPS press release as an exhibit to her Opposition. *See* Pl.'s Opp'n, Ex. A. The Court may not consider materials outside the pleadings in a motion to dismiss without converting it to a motion for summary judgment. *See* Fed. R. Civ. 12(d). The Court declines to do so here and therefore excludes the exhibit and does not consider it.

When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged") (internal quotation omitted). However, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

### III.  DISCUSSION

*A.     Plaintiff Fails to State a Claim Pursuant to Section 504*

Section 504 provides, in pertinent part, that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To state a claim under Section 504, a plaintiff must at least demonstrate "that he or she was discriminated against 'solely by reason of his or her handicap.'" *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 35 (D.D.C. 2001) (quoting 29 U.S.C. § 794(a)). In IDEA cases, however, the D.C. Circuit has noted that "'in order to show a violation of [Section 504], something more than a mere failure to provide the [FAPE] required by the [IDEA] must be shown.'" *Lunceford v. Dist. of*

8

*Columbia Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C. Cir. 1984) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). Accordingly, plaintiffs must show that defendants acted in bad faith or with gross misjudgment to assert a Section 504 claim in an IDEA case. *E.g., Henneghan v. Dist. of Columbia Pub. Schs.*, 597 F. Supp. 2d 34, 37 (D.D.C. 2009); *R.S. v. District of Columbia*, 292 F. Supp. 2d 23, 28 (D.D.C. 2003).

In this case, Defendants argue that Plaintiff has failed to state a Section 504 claim because the Complaint does not allege that A.B. was discriminated against solely because of her disability or that Defendants exhibited bad faith or gross misjudgment in doing so. Defs.' Mot. at 6-7. In response, Plaintiff argues that (1) the Complaint alleges sufficient facts for the Court to infer that A.B. was treated differently because of her disability; (2) because this is not a case for damages, Plaintiff does not need to allege bad faith or gross misjudgment; (3) even if Plaintiff does have to allege bad faith or gross misjudgment, the Complaint contains sufficient allegations of such; and (4) Defendants have already been found to be acting in bad faith or with gross misjudgment in the pending class action suit before Chief Judge Royce C. Lamberth, *DL v. District of Columbia*, No. 05-CV-1437. *See* Pl.'s Opp'n at 15-17. In this case, the Court agrees with Defendants that the Complaint does not allege that they acted in bad faith or with gross misjudgment. Therefore, the Court shall grant Defendants' motion to dismiss Plaintiff's Section 504 claim.

As a threshold matter, the Court rejects Plaintiff's argument that she does not need to allege facts to support that Defendants acted in bad faith or with gross misjudgment because she is not seeking damages. *See* Pl.'s Opp'n at 15-16. Plaintiff's obligation to allege a factual predicate to support an allegation of bad faith or gross misconduct is not dependent on the type of

9

relief sought, but on the fact that her Section 504 claim is asserted in the context of an IDEA case. *See, e.g.*, *Lunceford*, 745 F.2d at 1580 (holding that "in order to show *a violation* of [Section 504], something more than a mere failure to provide the [FAPE] required by the [IDEA] must be shown'") (quoting *Monahan*, 687 F.2d at 1170) (emphasis added); *see also Monahan*, 687 F.2d at 1171 ("So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under [Section] 504."). Thus, the Court concludes that Plaintiff must allege a factual predicate to support an allegation that Defendants acted in bad faith or with gross misjudgment in order to assert a Section 504 claim.

Anticipating this conclusion, Plaintiff relies on several of the Complaint's allegations to argue that the Complaint in fact alleges gross misjudgment. *See* Pl.'s Opp'n at 17.[6] For example, Plaintiff cites to allegations that A.B. was screened almost a year later than required under the IDEA, Compl. Facts ¶ 7, and that Defendants did not provide A.B. with the speech and language services she needed, *id.* ¶¶ 5, 8. These allegations, though serious, amount to garden variety IDEA violations, and the Complaint contains no indication that these alleged violations occurred due to gross misjudgment. *See R.S.*, 292 F. Supp. 2d at 28 (dismissing a Section 504 claim when "nothing in the complaint suggests an allegation of bad faith or gross misjudgment"); *cf. Henneghan*, 597 F. Supp. 2d at 37 (denying defendants' motion to dismiss a Section 504 claim because the complaint "expressly allege[d] 'gross negligence' . . . and the nature of the facts alleged yield a reasonable inference of bad faith and gross misjudgment . . . ."). Moreover, as Plaintiff does not claim that Defendants instituted a policy that systematically excluded A.B.

---

[6] The Court notes that Plaintiff does not contend that she has alleged facts from which bad faith on the part of Defendants may be inferred. *See* Pl.'s Opp'n at 17.

from receiving a FAPE, the Complaint's allegations do not warrant the inference that Plaintiff alleged gross misjudgment. *See Douglass v. District of Columbia*, 605 F. Supp. 2d 156, 168 (D.D.C. 2009) (holding that plaintiff alleged sufficient facts to infer a claim of gross misjudgment when the complaint alleged that DCPS "provided only regular education student [with] the opportunity to earn [credits toward graduation] and work towards a regular high school diploma, but did not provide the same opportunity to special education students") (internal quotation marks omitted and first alteration in the original). Although the Complaint's allegations may be sufficient to allege that Defendants failed to provide A.B. a FAPE, to assert a Section 504 claim "something more than a mere failure to provide [a FAPE] must be shown." *Lunceford*, 745 F.2d at 1580 (quoting *Monahan*, 687 F.2d at 1170). Finally, the fact that some Defendants were found in a *different case* to have acted in bad faith or gross misjudgment, does not change the fact that the Complaint *in this case* fails to allege bad faith or gross misjudgment.

Therefore, despite Rule 12(b)(6)'s low threshold, the Court concludes that the Complaint does not allege sufficient facts that, if accepted as true, state a claim under Section 504 in the context of an IDEA case. Accordingly, the Court shall grant Defendants' motion to dismiss Plaintiff's Section 504 claim.

### B. Plaintiff's Section 1983 Claim

In Count II, Plaintiff alleges that "by failing to award appropriate relief, and by failing to rule on DCPS' violation of the [McKinney Act], Plaintiffs have been denied federal statutory rights under color of law in violation of 42 U.S.C. § 1983." Compl. Facts ¶ 79. The McKinney Act provides, in pertinent part:

> Each State educational agency shall ensure that each child of a homeless individual and each homeless youth has equal access to the same free, approriate public

education [FAPE], including a public preschool education, as provided to other children and youths.

42 U.S.C. § 11431(1). Those seeking to enforce their rights under the McKinney Act must do so by invoking Section 1983.[7] *Lampkin v. District of Columbia*, 27 F.3d 605, 612 (D.C. Cir. 1994).

Defendants have moved to dismiss Count II, arguing that hearing officer correctly concluded that he did not have jurisdiction over Plaintiff's McKinney Act claim because the McKinney Act is enforceable only in federal court. Defs.' Mot. at 7 (citing *Lampkin*, 27 F.3d at 612). In response, Plaintiff argues that she has stated a Section 1983 claim based on a violation of the McKinney Act, for two reasons. First, Plaintiff insists that the hearing officer had jurisdiction over her claim that DCPS violated the McKinney Act, such that his decision not to exercise jurisdiction over this claim deprived A.B. of her rights under the McKinney Act. *See* Pl.'s Opp'n at 18-19. Alternatively, Plaintiff argues that, even if the hearing officer did not have jurisdiction to entertain her McKinney Act claim, this Court has jurisdiction over her Section 1983 claim that Defendants violated A.B.'s McKinney Act rights. *Id.* at 18. The Court shall address each argument in turn.

> 1. Plaintiff Has Failed to State a McKinney Act Violation Based on the Hearing Officer's Jurisdictional Decision

Plaintiff contends that she has stated a claim under Section 1983 because the hearing officer erroneously declined to exercise jurisdiction over her McKinney Act claim. The parties' briefing focuses solely on this issue. *See* Defs.' Mot. at 7-8; Pl.'s Opp'n at 17-21. Defendants do

---

[7] Section 1983 provides, in pertinent part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

not question whether a hearing officer's legal ruling can form the basis of a Section 1983 claim or whether Plaintiff can assert such a claim when the hearing officer is not named as a party defendant, and therefore the Court does not address these issues. Rather, the Court shall restrict its analysis to the issue of whether the hearing officer erred in declining to exercise jurisdiction over Plaintiff's McKinney Act claim.

Neither party has cited any case law that explicitly addresses whether a hearing officer has jurisdiction over McKinney Act claims. Nevertheless, Plaintiff insists that the IDEA and the McKinney Act's similar purposes demonstrate Congress' intent that the two statutory schemes work together to provide FAPE to homeless children. *See* Pl.'s Opp'n at 18-19. From this conclusion, Plaintiff asserts that the hearing officer must have had jurisdiction over her McKinney Act claim, just as he did over her IDEA claims, to ensure the delivery of A.B.'s FAPE. *See id.* at 19. Defendants, relying on the D.C. Circuit's decision in *Lampkin v. District of Columbia*, 27 F.3d 605 (D.C. Cir. 1994), argue that the hearing officer did not have jurisdiction over Plaintiff's McKinney Act claim because the McKinney Act is only enforceable through a Section 1983 claim asserted in a federal court. *See* Defs.' Mot. at 7-8. The Court agrees with Defendants and shall grant their motion to dismiss Plaintiff's Section 1983 claim based on the hearing officer's jurisdictional decision.

In *Lampkin*, the D.C. Circuit held that the McKinney Act "confers enforceable rights on its beneficiaries" that may be enforced under Section 1983. 27 F.3d at 612. In reaching this conclusion, the D.C. Circuit noted that "the McKinney Act *contains no statutory mechanisms for the administrative enforcement of the beneficiaries' rights . . . .*" *Id.* at 611 (emphasis added). As the McKinney Act is not enforceable at the administrative level, the Court holds that, regardless

of whether the IDEA and McKinney Act have similar purposes, the hearing officer did not err in concluding that he lacked jurisdiction over Plaintiff's McKinney Act claim. Accordingly, the Court concludes that Plaintiff has failed to state a Section 1983 claim with respect to the hearing officer's jurisdictional decision.

        2.    <u>The Court Cannot Conclude that Plaintiff Has Failed to State a Section 1983 Claim for a McKinney Act Violation Independent of the Hearing Officer's Jurisdictional Decision</u>

Plaintiff also claims that her Complaint contains sufficient factual allegations to state a McKinney Act violation independent of the hearing officer's jurisdictional decision. Pl.'s Opp'n at 18, 21. Defendants do not rebut this argument, as they neglected to file a reply and their motion to dismiss focuses exclusively on how McKinney Act violations are only enforceable in federal court. *See* Defs.' Mot. at 7-8. Without an argument to the contrary, the Court cannot conclude that the Complaint does not contain sufficient factual allegations to state a McKinney Act violation independent of the hearing officer's decision.

It is true that the Complaint repeatedly alleges that the hearing officer erred in declining jurisdiction. *See, e.g.*, Compl. Facts ¶ 67 ("The [hearing officer] erred by finding [he] did not have jurisdiction to rule as to whether or not DCPS violated the [McKinney Act]"); *id.* ¶ 79 (Count II: "By failing to award appropriate relief, and by failing to rule on DCPS' violation of the [McKinney Act], Plaintiffs have been denied federal statutory rights under color of law in violation of 42 U.S.C. § 1983."). However, the Complaint also alleges that: (1) Plaintiff and A.B. met the McKinney Act's definition of homelessness and lived in transitional housing during "all times relevant to this action prior to February 2010," *id.* Parties ¶ 4; (2) Plaintiff informed DCPS that she and A.B. lived in transitional housing, *id.* Facts ¶ 11; and (3) "DCPS did not offer

14

to provide [Plaintiff] with transportation, or a different placement, nor did DCPS offer [Plaintiff] any of the services [Plaintiff] was entitled to under the McKinney-Vento Act," *id.* ¶ 12. Construing these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff may have asserted a McKinney Act violation arising out of Defendants' decision not to offer A.B. transportation or a different placement. Although it is somewhat unclear as to whether Plaintiff has met her burden of pleading to establish municipal liability against the District of Columbia under Section 1983, the Court declines to make a ruling on this issue because Defendants have not briefed it.

Therefore, the Court shall grant Defendants' motion to dismiss Plaintiff's Section 1983 claim insofar as the claim is based on the hearing officer's refusal to exercise jurisdiction over Plaintiff's McKinney Act claim. However, the Court shall deny Defendants' motion to dismiss Plaintiff's Section 1983 claim to the extent the Complaint states a McKinney Act violation independent of the hearing officer's jurisdictional decision.

   C. *The Court Shall Dismiss Mayor Fenty and Interim Chancellor Henderson as Defendants*

Finally, Defendants have moved to dismiss Mayor Fenty and Interim Chancellor Henderson (collectively "the Officials") as defendants. Defendants contend that because the Officials were sued in their official capacities, Plaintiff's suit is effectively against the District of Columbia and the Officials' inclusion is "redundant and an inefficient use of judicial resources." *See* Defs.' Mot. at 5 (quoting *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005)). Defendants also contend that Plaintiff's failure to mention the Officials in the Complaint, other than listing them in the Complaint's caption, further supports dismissing the Officials as defendants. *See id.* Plaintiff opposes dismissing the Officials and counters that: (1)

the cases relied upon by Defendants are distinguishable; (2) other courts have allowed individuals named in their official capacities to be named defendants; (3) the Officials created and supervised DCPS, the agency responsible for the alleged denial of A.B.'s FAPE; and (4) the Officials had notice of DCPS' alleged failures due to the pending class action before Chief Judge Lamberth. *See* Pl.'s Opp'n at 10-13. For the reasons set forth below, the Court shall grant Defendants' motion to dismiss the Officials as defendants.

Plaintiff's claims against the Officials in their official capacities are effectively claims against the District of Columbia. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which the an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "[C]ourts have routinely dismissed claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.'" *Robinson*, 403 F. Supp. 2d at 49 (quoting *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997)); *see also Price v. District of Columbia*, 545 F. Supp. 2d 89, 94-95 (D.D.C. 2008) ("[W]hile neither the Supreme Court nor the District of Columbia Circuit have held that a municipal defendant sued in his or her official capacity in conjunction with the District of Columbia *must* be dismissed, summary dismissal is the norm in this jurisdiction . . . .") (collecting cases).

The Court finds no reason to deviate from this general principle in this case. Significantly, the Complaint's omission of any factual allegations regarding the Officials indicates that the Officials were named as defendants simply as another means of asserting claims against the District of Columbia. Plaintiff's perfunctory inclusion of the Officials as defendants is therefore "redundant and an inefficient use of judicial resources." *Robinson*, 403 F.

Supp. 2d at 49 (quoting *Cooke-Seals*, 973 F. Supp. at 187).

Plaintiff's arguments against dismissing the Officials are unpersuasive. First, although Plaintiff is correct that the cases cited in Defendants' motion to dismiss are not IDEA cases, Plaintiff fails to explain how this is a meaningful distinction that requires this Court to find that the Officials' inclusion is not redundant and unnecessary. *See* Pl.'s Opp'n at 10; *cf. Robinson*, 403 F. Supp. 2d at 49 (noting that courts in this Circuit have applied this general principle in cases involving various claims, including Section 1983 and tort claims). In fact, other courts have found official capacity defendants redundant and unnecessary in cases involving IDEA claims. *See, e.g.*, *Va. Office of Prot. & Advocacy v. Va. Dep't of Educ.*, 262 F. Supp. 2d 648, 655 (E.D. Va. 2003); *McCachren v. Blacklick Valley Sch. Dist.*, 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002). Second, most of the cases cited by Plaintiff are inapposite to the issue currently under consideration because these cases do not discuss whether including the official as a defendant was appropriate. *See* Pl.'s Opp'n at 11; *see, e.g.*, *Walker*, 157 F. Supp. 2d at 13 n.1 (noting that plaintiffs also named the DCPS's superintendent in his official capacity, but not analyzing whether the superintendent was appropriately named as a defendant). Third, Plaintiff's allegations relating to the Officials' involvement with DCPS are made for the first time in her opposition brief. However, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citation omitted). Moreover, these allegations pertain specifically to Mayor Fenty and former Chancellor Rhee and are therefore inappropriate in an official-capacity action.

Finally, the Court disagrees with Plaintiff that Chief Judge Lamberth's opinion in *DL v. District of Columbia*, 450 F. Supp. 2d 21 (D.D.C. 2006), requires the Court to deny Defendants'

motion to dismiss. Although Chief Judge Lamberth did state that "government officials . . . are not shielded from suit simply because the District of Columbia is also named," he relied on *Best v. District of Columbia*, 743 F. Supp 44 (D.D.C. 1990), in reaching this conclusion. *See DL*, 450 F. Supp. 2d at 24. In *Best*, plaintiffs asserted claims against the District of Columbia and two of its employees pursuant to Section 1983 and the common law for violating plaintiffs' privacy rights by videotaping them without their consent. *See Best*, 743 F. Supp. at 45, 49. The portion of *Best* that Chief Judge Lamberth cites to in *DL* discusses the *Best* court's denial of the defendant-employees' qualified immunity defense. *See id.* at 49. In essence, then, *Best* was an individual-capacity action, whereas here, Plaintiff has not alleged that the Officials themselves violated Plaintiff or A.B.'s rights, and the Complaint only mentions the Officials in its caption. *See generally* Compl. Therefore, the Court finds *Best*, and consequently *DL*, distinguishable from the case at bar.

In conclusion, the Court finds Plaintiff's perfunctory inclusion of the Officials "redundant and an inefficient use of judicial resources." *Robinson*, 403 F. Supp. 2d at 49 (quoting *Cooke-Seals*, 973 F. Supp. at 187). The Court shall therefore grant Defendants' motion to dismiss the Officials as defendants.

### IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' [6] Motion for Partial Dismissal of Complaint. The Court shall GRANT Defendants' motion to dismiss Plaintiff's Section 504 claim, as well as Defendants' motion to dismiss Mayor Fenty and Interim Chancellor Henderson as defendants in this action. In regard to Plaintiff's Section 1983 claim, the Court shall GRANT Defendants' motion to dismiss insofar as the claim alleges that the hearing officer erred in concluding that he did not have jurisdiction

over McKinney Act violations. The Court shall DENY, however, Defendants' motion to dismiss Plaintiff's Section 1983 claim to the extent the Complaint states a McKinney Act violation independent of the hearing officer's jurisdictional decision. An appropriate Order accompanies this Memorandum Opinion.

Date: November 2, 2010.

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
