# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| A.B., a minor by her mother and Next Friend Ebony R. Holmes-Ramsey, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 10-1283 (ABJ) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiffs Ebony R. Holmes-Ramsey and A.B., Ms. Holmes-Ramsey's minor child, filed a motion seeking attorneys' fees and costs in the amount of $140,019.94 pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B) (2012), for work completed in the underlying litigation.[1] Pls.' Mot. for an Award of Attys' Fees & Costs ("Pls.' Mot.") [Dkt. # 52]. Defendant opposed the motion, arguing that although plaintiffs are "prevailing parties" within the meaning of section 1415(i)(3)(B), they are not entitled to the entire amount of the fees requested. Def.'s Mem. in Opp. to Pls.' Mot. ("Def.'s Opp.") [Dkt. # 56].

On May 10, 2013, the Court referred the matter to a Magistrate Judge pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2(a). May 10, 2013 Order [Dkt. # 53]. The Magistrate Judge issued a Report and Recommendation, finding that although plaintiffs were a "prevailing party" within the meaning of section 1415(i)(3)(B) on some aspect of their case, they

---

1  The underlying litigation involved two appeals from two administrative hearing decisions, alleging, *inter alia*, that defendant violated the IDEA when it failed to offer a FAPE to A.B. *See generally* Am. Compl. [Dkt. # 20].

are only entitled to $37,133.70 in attorneys' fees and costs. Aug. 6, 2013 Report and Recommendation on Mot. for Attys' Fees ("Attys' Fees Report") at 14 [Dkt. # 60]. Plaintiffs filed timely written objections to the Magistrate Judge's Report and Recommendation, Pls.' Objection to Attys' Fees Report ("Pls.' Object.") [Dkt. # 61], and defendant filed a response. Def.'s Resp. to Pls.' Object. [Dkt. # 62]. Defendant did not object to any part of the Report and Recommendation.

After careful review of the Report and Recommendation, plaintiffs' objections, and defendant's response to plaintiffs' objections, the Court will adopt the Magistrate Judge's Report and Recommendation except to the extent that it reduces the applicable hourly rate set by the *Laffey* matrix by 25%. The Court will therefore grant plaintiffs' motion for attorneys' fees and costs in part and deny it in part, and will enter judgment in the amount of $49,432.12.

## BACKGROUND

### I. Statutory Background

Generally, parties bear their own litigation expenses, including the fees paid to an attorney, regardless of whether they win or lose. *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). But in some circumstances, Congress has provided "express statutory authorization to the contrary," creating what has come to be known as "fee-shifting provisions." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), citing *Alyeska Pipeline*, 421 U.S. at 240. The IDEA contains a fee-shifting provision. *See* 20 U.S.C. § 1415(i)(3)(B).

Section 1415(i)(3)(B) of that Act provides that this Court has the discretion to "award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." *Id.* In other words, if the plaintiff seeking attorneys' fees is a prevailing party,

the Court must determine whether the attorneys' fees are reasonable. *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010). Courts typically determine the reasonableness of attorneys' fees based on the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*, quoting *Hensley*, 461 U.S. at 433.

The plaintiff bears the burden of establishing both the reasonableness of the hourly rate and the reasonableness of the number of hours spent on a particular task. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995); *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995). To show the reasonableness of the hourly rates, plaintiff "must submit evidence on at least three fronts: 'the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *Jackson*, 696 F. Supp. 2d at 101, quoting *Covington*, 57 F.3d at 1107. To show the reasonableness of hours spent on a task, plaintiff may submit an "invoice that is sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004), quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

## II. Factual Background[2]

Plaintiff A.B. is a minor residing in the District of Columbia and has been diagnosed as having special needs. District of Columbia Public Schools ("DCPS") evaluated A.B. for the first time in July of 2009, right before A.B.'s fourth birthday. The school district proposed an Individualized Education Plan ("IEP") on October 7, 2009, but it was never implemented

---

2  The Court will incorporate the more detailed recitation of facts of the underlying litigation – as set forth in the February 14, 2012 Report and Recommendation that addressed the parties' summary judgment motions [Dkt. # 44] and that was adopted in pertinent part by this Court pursuant to its March 7, 2012 Order [Dkt. # 47] – by reference.

because A.B.'s mother – plaintiff Holmes-Ramsey – felt that the proposed services and placement would not adequately address A.B.'s needs. After securing independent evaluations of A.B. by a speech pathologist and a clinical psychologist, A.B.'s mother filed a due process complaint on March 19, 2010, alleging that DCPS violated the IDEA and the McKinney-Vento Homelessness Act, 42 U.S.C. § 11301 *et seq*. A due process hearing was held on April 21-22, 2010, and the hearing officer issued his decision on May 1, 2010 ("first HOD"), concluding that the sole violation of A.B.'s rights was DCPS's failure to identify her as a child with disabilities prior to her third birthday.

On July 2, 2010, DCPS convened an IEP meeting to review and revise A.B.'s IEP, and it increased the level of services she would receive. A.B.'s mother, however, was concerned that the IEP was still not adequate, and she filed a second due process complaint on August 13, 2010. The second due process hearing was held in October 2010, and the hearing officer issued a decision on November 2, 2010 ("second HOD"), finding in favor of plaintiffs only on their claim that DCPS failed to fully implement the remedy underlying the first HOD by failing to provide A.B. with transportation to a summer speech camp.

During the pendency of the second due process hearing, plaintiffs appealed the first HOD. The court granted in part and denied in part defendant's partial motion to dismiss plaintiffs' section 504 Rehabilitation Act claim and their 42 U.S.C. § 1983 claim. *See* Nov. 2, 2010 Order at 1 [Dkt. # 8]; Nov. 2, 2010 Mem. Op. at 18–19 [Dkt. # 9]. The court also granted defendants' motion to dismiss defendants Mayor Fenty and Interim Chancellor Henderson as improperly named defendants. *See* Nov. 2, 2010 Order at 1; Nov. 2, 2010 Mem. Op. at 18. Subsequently and with leave of court, plaintiffs amended their complaint to appeal both the first

and the second HOD, arguing that DCPS's actions violated the IDEA, section 504 of the Rehabilitation Act of 1973, the McKinney-Vento Homelessness Act, and section 1983.

The matter was then referred to the Magistrate Judge for full case management. The parties filed cross-motions for summary judgment, and – based on the Report and Recommendation issued by the Magistrate Judge – this Court ultimately entered judgment in favor of defendant on all of plaintiffs' claims except the claim that the hearing officer improperly discredited the testimony of plaintiffs' expert witnesses. After a hearing on the question of whether the Court could take up the issue of the adequacy of the IEP without remanding the matter to the hearing officer, the Court determined that a remand was necessary.

On remand, the hearing officer concluded that A.B.'s July 2010 IEP was inadequate. He therefore ordered that DCPS provide A.B. with the required services "in a separate setting for a significant portion if not the entire school day." Pls.' Reply to Def.'s Opp. at 3–4 [Dkt. # 57], quoting Feb. 21, 2013 Hr'g Officer Decision.

Having found success on remand, plaintiffs then filed this instant motion for attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B). As noted above, the Court referred the matter to the Magistrate Judge, who issued a Report and Recommendation suggesting that plaintiffs are entitled to $37,133.70 in attorneys' fees and costs. Plaintiffs' objections to that report are now before this Court.

**STANDARD OF REVIEW**

A court may refer nondispositive matters, including a motion for attorneys' fees, to a Magistrate Judge for resolution pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2. Fed. R. Civ. P. 72(a); LCvR 72.2(a); *see also New Life Evangelistic Ctr., Inc. v. Sebelius*, 847 F. Supp. 2d 50, 51 (D.D.C. 2012). Upon referral, the Magistrate Judge "must promptly

5

conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a); *see also* LCvR 72.2(a).

Once the Magistrate Judge issues his or her decision, any party may raise objections to that decision within fourteen days "after being served with the order." LCvR 72.2(b); *see also* Fed. R. Civ. P. 72(a). Failure to enter a timely objection will result in waiver. *See* Fed. R. Civ. P. 72(a).

The district court shall review "timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; LCvR 72.2(c). "A court should make such a finding when the court 'is left with the definite and firm conviction that a mistake has been committed.'" *New Life Evangelistic Ctr., Inc.*, 847 F. Supp. 2d at 53, quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't*, 659 F.3d 13, 21 (D.C. Cir. 2011).

**ANALYSIS**

Plaintiffs raise three objections to the Magistrate Judge's Report and Recommendation in this case. First, they allege that the Magistrate Judge improperly disallowed hours billed for time spent prior to November 2, 2010, on the original complaint and appeal of the first hearing officer decision ("HOD"). Pls.' Object. at 1–5. Second, they argue that the Magistrate Judge erred when he discounted the overall fee award by 60% for lack of success on the merits. *Id.* at 5–9. And third, plaintiffs object to the Magistrate Judge's decision to reduce by 25% the applicable hourly rate set by the *Laffey* matrix.[3] *Id.* at 10–12.

---

3  Defendant did not file objections to the Report and Recommendation. As a result, the Court adopts the unchallenged portions of the Report and Recommendation in their entirety – such as the undisputed finding that plaintiffs are "prevailing parties" within the meaning of section 1415(i)(3)(B) even though they found limited success on the merits of their claims – and the Court's review is limited to plaintiffs' three objections.

**I.    The Magistrate Judge acted within his discretion when he denied attorneys' fees for the hours billed prior to November 2, 2010, and when he reduced the overall fee award by 60% to reflect a lack of success on the merits.**

In determining the reasonableness of the hours submitted by plaintiffs for work performed in connection with this case, the Magistrate Judge first concluded that all work completed by plaintiffs' counsel "prior to the November 2, 2010 issuance of the second HOD [was] unsuccessful" because "plaintiffs failed on all the claims based on the first HOD." Attys' Fees Report at 5. As a result, the Magistrate Judge recommended that "all the time spent drafting the initial complaint, which was premised on the first HOD, the McKinney Vento Act, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983, must be eliminated" pursuant to *Hensley*. *Id.* He also recommended that some billing entries be disallowed on the grounds that they "are so vague that it is impossible to know what work was really done." *Id.* Page six through eight of the Report and Recommendation contains a chart laying out the billing entries eliminated for either lack of success on the merits or vagueness. *Id.* at 6–8.

Plaintiffs' first objection relates to the Magistrate Judge's elimination of nine of those seventeen billing entries.[4] Pls.' Object. at 5. Specifically, they argue that it was improper to eliminate the billing entries relating to the first complaint and appeal of the first HOD because those claims are related to the claims they asserted in their appeal of the second HOD since they all "stemmed from the same legal theory – a denial of FAPE related to A.B.'s inappropriate IEP and education placement" – and "the same facts supported these claims and related to the relief

---

4    Because the elimination of the other eight billing entries is left uncontested, the Court adopts the Magistrate Judge's recommendation as to those entries without discussion. *See* Pls.' Object. at 5 n.1.

7

requested, all of which ultimately led to the successful results achieved on remand."[5]  *Id.* at 3. They set out the fees they believe to be improperly excluded on page five of their written objections, all of which deal with hours billed researching the IDEA claims raised in connection with their appeal of the first HOD.  *Id.* at 5.

Plaintiffs' second objection also relates to the Magistrate Judge's conclusion that their limited success on the merits warranted a 60% reduction in the overall fee award, in addition to the hours eliminated for work completed prior to November 2, 2010.  *Id.* at 5–9.  The Magistrate Judge explained the decision to reduce the award an extra 60% on the grounds that – with respect to the appeal of the second HOD and the claims asserted in the amended complaint – plaintiffs prevailed "on only one of their four claims," making "'a fee award based on the claimed hours clearly . . . excessive.'"  Attys' Fees Report at 10, quoting *Hensley*, 461 U.S. at 436.  Plaintiffs contest this determination, arguing again that all of their claims were interrelated and therefore a failure to prevail on some could not serve as the basis for a fee reduction.[6]  Pls.' Object. at 5–8.

---

5  Plaintiffs do not attempt to provide further elucidation with respect to the billing entries that the Magistrate Judge eliminated on account of vagueness.  *See* Pls.' Object. at 1–4.  As a result, the Court finds that those billing entries are properly excluded.  *See Hensley*, 461 U.S. at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); *Holbrook*, 305 F. Supp. 2d at 45, quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337.

6  Plaintiffs also argue that the 60% reduction is not warranted because defendant did not ask for it.  Pls.' Object. at 8–9.  But Supreme Court precedent – as discussed more fully below – requires a court to consider not only whether there are unrelated, unsuccessful claims that should not serve as a basis for a fee award, but also, regardless of relatedness, whether the fee award is reasonable in light of the level of success obtained.  *Hensley*, 461 U.S. at 434; *see also Brooks*, 963 F.2d at 1535–36.  Thus, the Magistrate Judge was required to consider whether the calculated fee award was reasonable in light of plaintiffs' limited success on the merits and to reduce the fee award accordingly, regardless of whether defendant raised that point.  To the extent that plaintiff intended to raise this argument as a separate objection, it is overruled.

After reviewing the Report and Recommendation, the Court finds that neither the Magistrate Judge's recommendation that the hours billed for work prior to the November 2, 2012 HOD be excluded from the total number of hours to be compensated nor the decision to reduce the overall fee award by 60% to reflect plaintiffs' limited success were clearly erroneous or contrary to law. When a prevailing party – such as plaintiffs in this case – prevails on only some of its claims, *Hensley* provides a two-step inquiry to determine what attorneys' fees may be recovered.[7] *Hensley*, 461 U.S. at 434; *Trout v. Sec'y of Navy*, 540 F.3d 442, 448 (D.C. Cir. 2008); *Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1569 (D.C. Cir. 1993); *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992). Application of that two-step inquiry to the facts of this case supports both the exclusion of the listed hours and the 60% reduction in the remaining fee award.

### A. The Magistrate Judge properly excluded the hours billed prior to November 2, 2010, as work completed on unrelated, unsuccessful claims.

Under the first prong of *Hensley*, the reviewing court must consider whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. If the unsuccessful claims were in fact unrelated to the successful ones, "a court must confine fee awards to work done on the successful claims" by "weeding out work done on unrelated unsuccessful claims from any award." *Brooks*, 963 F.2d at 1535; *see also Goos*, 997 F.2d at 1569, quoting *Brooks*, 963 F.2d at 1537 ("In such cases, the fact finder is to 'prevent claimant from piggybacking fees incurred for work done on losing claims onto unrelated winning issues.'"). The court may do so by "attempt[ing] to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*,

---

7    Although *Hensley* involved fee-shifting under 42 U.S.C. § 1988, this circuit applies the rule from that case to "all federal statutes limiting fee awards to 'prevailing part[ies].'" *Brooks*, 963 F.2d at 1535 (alteration in original), quoting *Hensley*, 461 U.S. at 433 n.7.

9

461 U.S. at 436–37; *see also id.* at 436 ("There is no precise rule or formula for making these determinations."). Claims are distinct and sufficiently unrelated where they do not involve a common core of facts and are not based on related legal theories. *Goos*, 997 F.2d at 1569; *see also Trout*, 540 F.3d at 448. A determination of relatedness must be made on a case-by-case basis. *Brooks*, 963 F.2d at 1539; *see also Hensley*, 461 U.S. at 429.

Here, the hours excluded for work billed prior to November 2, 2010, relate to the appeal of the first HOD only. *See* Attys' Fees Report at 4–8. When reviewing the merits of plaintiffs' case regarding the first HOD, the Magistrate Judge determined that all claims linked to the first HOD decision were nonjusticiable because the IEP challenged at the first HOD was never implemented and therefore could not serve as the basis for a denial of FAPE. *See id.* at 5; Feb. 14, 2012 Report and Recommendation ("1st Report") at 13–14 [Dkt. # 44]. Neither party objected to this determination, and the Court therefore adopted it. *See* Mar. 7, 2012 Order at 2 [Dkt. # 47]. As a result, plaintiffs were unsuccessful on all of their claims arising out of the first HOD, and they can only recover for work completed on the first HOD claims if those claims are related to the claim that was ultimately successful in this Court. The Court finds that the unsuccessful and successful claims are not related and therefore overrules plaintiffs' objection to the Magistrate Judge's decision to exclude the hours billed prior to November 2, 2010.

In the underlying litigation, plaintiffs' only success in this Court (as opposed to their later success on remand before the hearing officer) was that they secured a remand to the hearing officer on the grounds that the hearing officer failed to give proper weight to plaintiffs' expert testimony at the second HOD. Attys' Fees Report at 9; *see also* 1st Report at 16–21. This successful "claim" does not share either a common core of facts or a common legal theory with any of the unsuccessful claims asserted in connection with plaintiffs' appeal of the first HOD.

The first HOD was issued in May 2010 and related to DCPS's childfind obligations, its July 2009 evaluation of A.B., and its proposed October 2009 IEP for A.B. The second HOD was issued in November 2010 and related to the July 2010 IEP meeting. Put simply, the first HOD addressed defendant's actions in 2009 whereas the second HOD addressed defendant's actions in 2010. The unsuccessful claims related to the appeal of the first HOD, therefore, do not share a common core of facts with the successful claim that was linked to the hearing officer's error at the second HOD.[8] *See Brooks*, 963 F.2d at 1539.

Similarly, the excluded hours relating to the first HOD do not share a common legal theory with plaintiffs' sole successful claim in this Court. Although plaintiffs' attacks on both HODs addressed the same statutory rights – the IDEA, section 504 of the Rehabilitation Act of 1973, the McKinney-Vento Homelessness Act, and 42 U.S.C. § 1983 – plaintiffs did not prevail on any of those claims in this Court. In fact, plaintiffs' only successful "claim" was not actually a substantive victory, but related solely to an error committed during the second HOD – that the hearing officer improperly declined to give weight to testimony by plaintiffs' experts. That success did not solidify a victory for plaintiffs, who were still required to press their claims on remand to obtain their requested relief, and it cannot be said that the Court's determination that the hearing officer erred was premised on the substantive law underlying plaintiffs' four statutory claims. As a result, plaintiffs' unsuccessful claims asserted in connection with their appeal of the first HOD do not share a common legal theory with the error that entitled plaintiffs to a remand.

---

8   Moreover, plaintiffs' success in demonstrating an error during the second HOD, which entitled them to a remand, is based solely on what transpired at the second HOD and therefore does not share any common facts with what occurred at the first HOD.

The unsuccessful claims are therefore unrelated to plaintiffs' successful claim, and the Magistrate Judge properly excluded work completed in furtherance of the claims associated with the appeal of the first HOD. *See Hensley*, 461 U.S. at 434–35; *Brooks*, 963 F.2d at 1535. Plaintiffs' first objection is overruled.

### B. The Magistrate Judge acted within his discretion when he reduced plaintiffs' overall fee award by 60% to reflect plaintiffs' level of success in this Court.

The second inquiry under *Hensley* requires a court to consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." 461 U.S. at 434. Put differently, the second factor requires a court to "consider whether the success obtained on the remaining claims is proportional to the efforts expended by counsel." *Brooks*, 963 F.2d at 1535. This is a results-oriented inquiry: "it is the *degree* of the plaintiff's success that is the critical factor to the determination of the size of a reasonable fee." *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 47 (D.D.C. 2012), citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 786 (1989).

But "a finding that the plaintiff obtained significant relief" does not end the analysis. *Hensley*, 461 U.S. at 439–40. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440; *Goos*, 997 F.2d at 1572. A reduction in fees based on the level of success is appropriate regardless of whether the unsuccessful claims are related to the successful ones, *Goos*, 997 F.2d at 1569, and the reduction may be imposed even if the court already reduced the fee award under *Hensley*'s first prong. *Brooks*, 963 F.2d at 1538–41.

Here, it is undisputed that plaintiffs' success in this Court is limited to a remand based on an error at the second HOD, and that they did not obtain any of the declaratory relief sought in their amended complaint. *See* Attys' Fees Report at 9; *see also* Am. Compl., Prayer for Relief,

12

¶¶ 1–3.  It is also undisputed that plaintiffs' success on remand was premised on only one of their four statutory claims.  Attys' Fees Report at 9.  Although the relief granted by the hearing officer pursuant to that success "was a significant achievement, and the work in this Court was *sine qua non* to accomplish it," *id.*, the significance of the success obtained is not the inquiry; this Court must also consider the extent of the relief obtained in the context of the litigation as a whole. *Hensley*, 461 U.S. at 440.  Plaintiffs' level of success in this case – in light of the whole litigation – does not support a finding of reasonableness with respect to the amount of fees plaintiffs seek. *Id.*; *see also A.S.*, 842 F. Supp. 2d at 46–47.  As a result, the Magistrate Judge acted within his discretion when he reduced plaintiffs' overall fee award by 60%.

Plaintiffs object to this conclusion on the grounds that the IDEA, section 504, McKinney-Vento Homelessness Act, and section 1983 theories were all interrelated and supported their ultimate success on remand.  But whether those theories are interrelated is irrelevant to *Hensley*'s level of success inquiry.  *See Goos*, 997 F.2d at 1569 (emphasis added), quoting *Brooks*, 963 F.2d at 1537 ("[I]f successful and unsuccessful claims share a common core of facts [and are therefore related,] . . . a court should simply compute the appropriate fee *as a function of degree of success*."); *see also Hensley*, 461 U.S. at 438–39.  Related or not, three of plaintiffs' four alleged statutory bases for relief were unsuccessful, rendering full compensation for all the work performed by counsel during the case disproportionate to the level of success achieved and rendering the amount of fees plaintiffs requested unreasonable.  *See A.S.*, 842 F. Supp. 2d at 46–47.  Plaintiffs' second objection is therefore overruled.

## II.  The Magistrate Judge erred when he reduced the *Laffey* rate by 25%.

Plaintiffs' third and final objection has merit.  As noted above, the party moving for a fee award bears the burden of establishing a reasonable hourly rate.  *In re North*, 59 F.3d at 189.  To

do so, plaintiffs must set forward evidence of each lawyer's skills, education, and reputation; the lawyers' billing practices; and the prevailing market rate. *Jackson*, 696 F. Supp. 2d at 101, quoting *Covington*, 57 F.3d at 1107.

Here, there is no question that plaintiffs met their burden as to the first two prongs, and the controversy over the reasonable hourly rate centers solely on what should be considered the "prevailing market rate." Plaintiffs argue that they are entitled to compensation at the full *Laffey* matrix rate, whereas the Magistrate Judge determined that the *Laffey* rate should be discounted by 25% based on DCPS guidelines and the Magistrate Judge's conclusion that the case was not sufficiently complex. Reviewing the Magistrate Judge's decision under the deferential standard set by Rule 72(a) and Local Rule 72.2(c), the Court concludes that the Magistrate Judge's decision to reduce the *Laffey* matrix by 25% was clearly erroneous and contrary to law.

Although some courts in this district have reduced the *Laffey* matrix by 25% in IDEA cases, *see, e.g.*, *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 63 (D.D.C. 2011); *Agapito v. District of Columbia*, 525 F. Supp. 2d 150, 150 (D.D.C. 2007), a reduction is not proper in this case. First, the Magistrate Judge's reliance on the now abandoned DCPS guidelines is troubling and cannot serve as a basis for reducing what is otherwise presented as evidence of the prevailing market rate.[9] Second, the Magistrate Judge erred in basing its 25% reduction on a statement that this case is not complex and therefore the attorneys are not entitled to a full *Laffey* rate. The Magistrate Judge offered no support for his finding of noncomplexity, and an unsupported across-the-board deduction based solely on the fact that the case involves IDEA issues is contrary to law: "It is important to understand that [IDEA] cases take a variety of different

---

9   Although the DCPS guidelines have been given deference in the past, there is no indication why the Court should continue to accord deference to a schedule that DCPS itself has abandoned.

litigation paths . . . [and] cannot be dismissed as categorically routine or simple." *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 243 (D.D.C. 2012); *A.S.*, 842 F. Supp. 2d at 48 ("This court finds that the determination [of whether to reduce the *Laffey* rate] must be made in a case by case analysis."); *see also Hensley*, 461 U.S. at 429 ("The amount of the fee, of course, must be determined on the facts of each case."). And several courts in this district, including this one, "ha[ve] rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation, and reaffirm[ed] that IDEA cases are sufficiently complex to allow application of the *Laffey* Matrix." *Young v. District of Columbia*, 893 F. Supp. 2d 125, 131 (D.D.C. 2012) (alteration in original), quoting *Irving v. District of Columbia*, 815 F. Supp. 2d 119, 129 (D.D.C. 2011); *see also Eley v. District of Columbia*, No. 11-309, 2013 WL 6092502, at *15–16 (D.D.C. No. 20, 2013) (declining to reduce the applicable *Laffey* rate because "courts are effectively double counting the complexity factor for civil rights attorneys practicing in the IDEA area: first for the number of hours expended and then by further reducing [the *Laffey*] rate"); *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 74–75 (D.D.C. 2011); *Jackson*, 696 F. Supp. 2d at 102 (collecting cases showing that "numerous judges in this district have applied *Laffey* rates in the context of fee awards arising out of IDEA administrative proceedings"). This is not to say that all IDEA cases will warrant application of the full *Laffey* rate; it simply recognizes that a court may not automatically impose a reduction – without additional reasons – just because the case at hand involves IDEA issues. *See Young*, 893 F. Supp. 2d at 131; *Thomas*, 908 F. Supp. 2d at 243–44.

Here, there are no reasons warranting a departure from the full *Laffey* rate. This case involved over two years of complex litigation, both at the administrative and the federal level. Plaintiffs' complaint raised appeals regarding not one, but two HODs that claimed violation of

four federal statutes, involved full briefing of cross-motions for summary judgment, and resulted in an oral argument in front of this Court as well as a remand to the HOD for further determination of A.B.'s rights. There is no indication that the federal statutes at issue in this case were noncomplex or that this case required only a minimal amount of evidence. As a result, the Court cannot find that this case is uncomplicated, *see A.S.*, 842 F. Supp. 2d at 48–49, and it concludes that application of the full *Laffey* rate is warranted.

## CONCLUSION

Based on the Court's review of the Magistrate Judge's Report and Recommendation, plaintiffs' objections, and defendant's response to those objections, the Court will adopt in part the Magistrate Judge's Report and Recommendation [Dkt. # 60] and reject it only to the extent that it reduces the applicable hourly rate set by the *Laffey* matrix by 25%. The fee award in this case will be calculated at the full *Laffey* rate. As a result, the Court will grant plaintiffs' motion for attorneys' fees in part and deny it in part, and defendant District of Columbia will be required to pay $49,432.12 in costs and attorneys' fees to plaintiffs Ebony R. Holmes-Ramsey and A.B. by February 28, 2014. A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: January 31, 2014

16